Nott, J.,
delivered the opinion of the court:
This is an action brought to recover $735,644, with interest on that sum since March 6,1865, for certain personal property, consisting of 4,042 boxes of tobacco captured, converted, and *376 destroyed by the armies of tbe United States during the war of the rebellion.
The' ease comes before the court upon demurrer. The petition which is thus questioned shows an agreement made with a Treasury agent for bringing out this product from the insur-rectionary States; an order made by President Lincoln securing to the claimants free and unmolested passage through the lines and safe conduct within the lines ; a subsequent purchase at Bichmond in January and February 1865 of the property; and then that, of the property so purchased, a part was “ burned, And destroyed by the military forces of the United States,” a part was “ talcen by the military forces of the United States and converted to the use of the United States,” and a part was turned back by the army and destroyed by the fire in Bichmond “ incident to the capture” of that city.
The petition does not allege that the proceeds of any of this tobacco ever reached the Treasury so as to bring the case within the provisions of the Abandoned or captured property act; and the counsel for the claimants has expressly said “we do not profess to sue under that act, and unless we find some other foundation for our smt we expect to fail? The foundation for the suit .is thought to be found in the violation of an “express contract made under the authority of a statute.”
It is conceded by the learned counsel that “if everything that is said in the opinion of the Supreme Court in the case of Lane were to be taken here as the resolution of the court, and as law, it would be an end of this case.” The learned counsel then proceeds to show that most of the opinion and reasoning of the court were merely “ dictaf and that the point really decided does not affect the case now at bar.
There is a difference between the dicta of a judge and the alternative propositions of a court. A point to be determined must be & point involved. If not within the facts of the case, it is not within the decision of the court. But where the facts present a number of points all going to the merits, it is within the proper office of the court to determine any or all of them; and when an appellate court has thus announced a decision upon several points involved, an inferior tribunal cannot select one of the points determined, as the true resolution of the court and reject the others as needlessly decided. The true and only rule, I apprehend, is that every proposition of law enunciated, if *377 actually involved in tlie facts of the case, is to be taken as a principle of law stare decisis.
The only case I bave noticed where any such question was raised as is here discussed, is that of James v. Patten in the New York Court of Appeals, (2 Seld., New York Reports, p. 9i) It was contended that the question there involved had not been expressly determined by the Court of Errors in Davis v. Shields, (26 Wend. R., p. 341,) because, as two distinct questions had been discussed in the opinions in that case, and as most of the members of the court voted silently, it was impossible to discover on which of the two questions a majority of tiie court voted for reversal, although, as was conceded, all of the opinions read were in favor of a reversal on both grounds. It was by no means contended, as is here done, that where two questions are discussed and involved, either of which will be sufficient for a reversal, an inferior court may say that the one was decided rightly and the other wrongly, and hold the latter question to be still open. The length to which the argument went was merely that the silence of the majority of the judges left it uncertain whether they agreed with the members who spoke in all that they said.
Mr. Justice Paige thus expresses the opinion of the Court of Appeals:
“Where a court consists of several judges, two or more of whom deliver .opinions, and all arrive at the same general result in the cause, but for different reasons, and the residue of the judges give a silent vote of concurrence with them in a decision for the one party or the other, there, as it does not appear that a majority of the court agreed as to any one question in particular as the ground of the decision, the case cannot be considered as authority on any of the questions which arose in the cause. But where several questions arise in the cause and the opinions delivered agree in regard to all of them, and the other members of the court give a silent vote of concurrence, 'then all the questions will be deemed to have been determined by a majority of the court, and the case will be regarded and respected as an authoritative adjudication of all such questions.”
In the case of Lane, the action rested on a contract made by a Treasury agent, similar to the contract in this case, and the validity of the contract was necessarily involved in the case. *378 The reasoning of the learned judge who delivered the opinion of the court may rest overmuch on the fact of an outward cargo being included in what the Supreme Court terms the “arrangements” of the voyage, but the decision is emphatically clear that “the contract was unauthorized, and had no power to bind the government
The real point of the decision in Lane’s Case is, that under the Acts July 13, 1861, and July 2, 1864, (12 Stat L., p. 256; 13 Stat. L., p. 375,) a resident within the insurrectionary districts might bring out cotton and take back supplies, but that a citizen within loyal territory could not engage ill trade and commerce with the enemy by virtue of the provisions of these statutes. Upon this point the opinion, after a full examination of the statute, says that the Treasury agent “was not authorized in making any contract with a person occupying the status of Lane.” In this case the claimants occupied the same status, and the contract was made by the same Treasury agent. It may have been different from Lane’s, but the decision of the Supreme Court extends to “any contract.” The judges of the Supreme Court may have been mistaken in their construction of the statutes, and misinformed as to the practice and policy of the governm ent, but that court has decided that a Treasury agent had no power to contract with a northern citizen, and that court must correct its own errors.
Apart from the decision of the Supreme Court, we think it questionable whether this case comes within our own favorable decision in Lane’s Case, (2 C. C1s. R., p. 184.) The decision there rested upon the ratification of the acts of the seizing officer by the government. In the subsequent case of Burnside, (3 0. Cls. B., p. 366,) the seizure was not ratified by an executive department, and it was held that the acts of the seizing officers did not raise a liability on the part of the defendants. The decision of the Supreme Court in Lane’s Case relieves us, however, from the examination of this question.
The judgment of the court is, that the demurrer is well taken, and that the petition be dismissed.